1
2
3
4
5
6
7       **UNITED STATES DISTRICT COURT**
8            **DISTRICT OF NEVADA**
9
10  TERRIBLE HERBST, INC., *et al.*,
11       Plaintiffs,                          Case No. 2:06-cv-00725-LDG (RJJ)
12  v.                                        **ORDER**
13  FIREMAN'S FUND INSURANCE
    COMPANY,
14
         Defendant.
15
16
17       The plaintiffs, Terrible Herbst, Inc., Terrible Herbst, Inc. d/b/a Terrible Herbst Oil

18  Company and Herbst Oil Company, Jerry Herbst, Jerry Herbst d/b/a Terrible Herbst Oil

19  Company and Herbst Oil Company, (collectively Terrible Herbst), allege a single claim for

20  breach of contract against the defendant, Fireman's Fund Insurance Company (Fireman's

21  Fund), for failure to defend and indemnify Terrible Herbst in a lawsuit.  Presently, Terrible

22  Herbst moves for partial summary judgment (#34) solely as to whether Fireman's Fund

23  owed Terrible Herbst a duty to defend the underlying suit.  Fireman's Fund opposes the

24  motion (#39).  Having read and considered the pleadings, papers, and competent evidence

25  submitted by the parties, the court will grant the motion.

26

1       Motion for Summary Judgment

2           In considering a motion for summary judgment, the court performs "the threshold

3  inquiry of determining whether there is the need for a trial—whether, in other words, there

4  are any genuine factual issues that properly can be resolved only by a finder of fact

5  because they may reasonably be resolved in favor of either party." *Anderson v. Liberty*

6  *Lobby, Inc.*, 477 U.S. 242, 250 (1986).  To succeed on a motion for summary judgment,

7  the moving party must show (1) the lack of a genuine issue of any material fact, and (2)

8  that the court may grant judgment as a matter of law.  Fed. R. Civ. Pro. 56(c);  *Celotex*

9  *Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

10          A material fact is one required to prove a basic element of a claim.  *Anderson,* 477

11  U.S. at 248.  The failure to show a fact essential to one element, however, "necessarily

12  renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.

13          "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after

14  adequate time for discovery and upon motion, against a party who fails to make a showing

15  sufficient to establish the existence of an element essential to that party's case, and on

16  which that party will bear the burden of proof at trial."  *Id*.  "Of course, a party seeking

17  summary judgment always bears the initial responsibility of informing the district court of

18  the basis for its motion, and identifying those portions of 'the pleadings, depositions,

19  answers to interrogatories, and admissions on file, together with the affidavits, if any,' which

20  it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S.

21  at 323.  As such, when the non-moving party bears the initial burden of proving, at trial, the

22  claim or defense that the motion for summary judgment places in issue, the moving party

23  can meet its initial burden on summary judgment "by 'showing'–that is, pointing out to the

24  district court–that there is an absence of evidence to support the nonmoving party's case."

25  *Celotex*, 477 U.S. at 325.  Conversely, when the burden of proof at trial rests on the party

26

2

moving for summary judgment, then in moving for summary judgment the party must establish each element of its case.

Once the moving party meets its initial burden on summary judgment, the non-moving party must submit facts showing a genuine issue of material fact.  Fed. R. Civ. Pro. 56(e).  As summary judgment allows a court "to isolate and dispose of factually unsupported claims or defenses," *Celotex*, 477 U.S. at 323-24, the court construes the evidence before it "in the light most favorable to the opposing party."  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The allegations or denials of a pleading, however, will not defeat a well-founded motion.  Fed. R. Civ. Pro. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

Background

Fireman's Fund issued, to Terrible Herbst, a commercial general liability insurance policy effective June 17, 1976, to June 17, 1977.  The policy was negotiated and issued in Nevada for the benefit of a Nevada corporation, individuals and entities.  The policy provides coverage for locations in Nevada and California.

Fireman's Fund's policy contains the following provisions:

The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . property damage . . . to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of . . . property damage, even if the allegations of the suit are groundless, false or fraudulent, and may make such investigation of such claim or suit as it deems expedient . . ..

"[P]roperty damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom . . ..

"[O]ccurrence" means an accident, including continuous or repeated exposure conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

[B]odily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or

pollutants, into or upon the land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental; . . ..

In November 1998, Terrible Herbst was named as a defendant in *South Tahoe Public Utility District v. Atlantic Richfield Company, et. al.,* Case No. 999128, Superior Court of the State of California, County of San Francisco.  That suit alleged, *inter alia*, that methyl tertiary butyl ether (MTBE) contaminated ground water through leaking gasoline systems and gasoline spills onto or into the ground at gasoline stations.  The suit alleged that the problems of leaking gasoline systems have been known for at least three decades, that a manufacturer first produced MTBE in the 1960s, and that "by 1979" some manufacturers sold MTBE as a gasoline octane booster, and that one producer "first marketed" a reformulated gasoline in the late 1980's.[1]  The suit alleged that Terrible Herbst contributed to the MTBE contamination at its service station in South Lake Tahoe, California.

On December 3, 1998, Terrible Herbst timely tendered the defense of the lawsuit to Fireman's Fund.  On December 15, 1998, Fireman's Fund denied the tender of defense of the underlying lawsuit, asserting:

> As Fireman's Fund understands its history, MTBE was not marketed in California until the late 1980's which was after the effective date of the Fireman's Fund policy MXP 3001756 (effective 06/17/76 to 06/17/77).  Therefore, it is Fireman's Fund's position there is no duty to defend or indemnify Terrible Herbst for this matter.

Potential for Coverage

Fireman's Fund's duty to defend Terrible Herbst  arose when Terrible Herbst tendered defense of the underlying suit, even if the claims alleged were groundless, false or fraudulent, unless at the time of tender there was no potential for coverage.  The parties

---

[1]    The suit lacks any allegation that this was the producer's first marketing of any gasoline product containing MTBE in California.

4

1  disagree as to the method courts in Nevada would apply to determine whether there is no

2  potential for coverage.  Terrible Herbst argues that Nevada would follow the majority of

3  states and apply the "four corners" rule.  Pursuant to this rule, and with one narrow

4  exception, the potential for coverage, and thus the duty to defend, is determined solely by

5  comparing the allegations of the underlying complaint to the policy.  Fireman's Fund

6  counters that Nevada would follow California law.  In California, an insurer's duty to defend

7  is also determined in the first instance by comparing the allegations of the underlying

8  complaint against the policy.  *See, Montrose Chemical Corp. of California v. Superior*

9  *Court*, 6 Cal.4th 287, 295, 861 P.2d 1153 (1993).  Unlike the four corners rule, however,

10  California also permits consideration of extrinsic evidence known to the insurer at the time

11  of tender to establish or defeat a duty to defend.  *Id.*   As summarized in *Montrose*, "[t]he

12  defense duty is a continuing one, arising on tender of defense and lasting until the

13  underlying suit is concluded [citation omitted] or until it has been shown that there is *no*

14  potential for coverage . . .."  6 Cal.4th at 295.  The court does not need to resolve whether

15  Nevada would follow the four corners rule or permit consideration of extrinsic evidence,

16  because Fireman's Fund has not offered extrinsic evidence, known to it when Terrible

17  Herbst tendered the defense, establishing that there was never a potential for coverage.

18       Initially, the "four corners" of the complaint, when compared against the terms of the

19  policy, do not establish that there was never a potential for coverage.  To find that the

20  allegations of a complaint preclude any potential for coverage, the complaint must allege

21  facts that preclude the potential for coverage.  At issue is whether there is no potential for

22  coverage, not whether there is a potential for no coverage.  The allegations of the

23  underlying complaint defeat an insurer's duty to defend only when they establish that the

24  insurer has no potential duty to indemnify.  For example, in determining whether the MTBE

25  contamination occurred during the policy's effective period, the court looks only to whether

26  the underlying complaint alleges facts establishing that no contamination event could have

occurred during the policy period. The complaint does not allege any such facts precluding MTBE contamination at the Terrible Herbst gas station during the policy period. Rather, the complaint recognizes the existence of MTBE prior to the policy period. The allegation that gasoline was sold "by 1979" with MTBE does not preclude a finding that gasoline was sold in 1976 with MTBE. Similarly, Fireman's Fund argues that the MTBE contamination was not an "occurrence" because the complaint includes allegations of intent and expectation. The argument fails because the relevant question is not whether the complaint alleges facts allowing a conclusion that some contamination events were not "occurrences," but whether the complaint alleges facts that require a finding that the every contamination event for which Terrible Herbst could be held liable was not an occurrence. Fireman's Fund does not point to any such allegation, and the Court cannot discover any such allegation. Fireman's Fund further argues that the underlying complaint establishes no potential for coverage under the policy's exclusion for pollution, because the complaint lacks any allegation that the contamination was the result of a sudden and accidental discharge. The relevant consideration, however, is whether the complaint alleges that the only methods of contamination were not the result of a sudden and accidental discharge. As the complaint lacks any such allegations, a potential for coverage exists.

Further, even a consideration of competent extrinsic evidence does not defeat a finding that Fireman's Fund's duty to defend arose at the time Terrible Herbst tendered its defense. In determining whether a duty to defend arises, the court looks only to that extrinsic evidence known to the insurer at the time of tender. The court does not consider facts that existed at the time of tender but of which the insurer lacked knowledge or evidence. Fireman's Fund's error is most obvious in its reliance on materials post-dating Terrible Herbst's tender of defense by several years. While these materials are evidence of facts existing at or prior to the tender, they are not competent evidence of the evidence known to Fireman's Fund. Rather, the dates of these materials conclusively establish that

1  they are extrinsic evidence that was not known to Fireman's Fund when Terrible Herbst

2  tendered its defense.  The error, however, extends to Fireman's Fund's reliance on any

3  evidence of MTBE usage in California that was known at the time of tender without offering

4  evidence that it knew of these facts when Terrible Herbst tendered its defense.[2]

5       The only evidence offered by Fireman's Fund regarding extrinsic evidence of which

6  it had knowledge at the time of the tender is the declaration of the adjuster that denied

7  Terrible Herbst's tender.  The entirety of that evidence is the adjuster's statement that "[he]

8  had knowledge of certain established facts regarding the history of MTBE, including that

9  MTBE was not authorized for use as an additive to gasoline by the United States

10  Environmental Protection Agency until 1979, and that MTBE was not marketed in California

11  until the late 1980's."  This evidence fails because, even accepting the adjuster's

12  knowledge of these "established facts" as evidence of those facts, these two "established

13  facts" do not preclude the potential that the Terrible Herbst gasoline station sold gasoline

14  containing MTBE during the policy period.  At issue is whether *any potential* existed, at the

15  time of tender, that Terrible Herbst sold gasoline containing MTBE during the policy period.

16  Assuming that "MTBE was not marketed in California until the late 1980's" does not

17  establish that it was not added to gasoline sold by Terrible Herbst at its gas station in

18  California during the policy period.  Notably, despite the adjuster's statement that MTBE

19  was not "marketed" until the late 1980's, Fireman's Fund's own statement of undisputed

20  facts asserts only that MTBE was not "commercialy used" in California gasoline until 1979

21  at the earliest.  As even Fireman's Fund recognizes, the marketing of MTBE to which the

22  adjuster refers is incompetent as evidence of even the earliest "commercial use" of MTBE

23  _____

24       [2]       Fireman's Fund's assertion that these materials were included in the "claim
   file" does not establish that they were known to it at the time of tender.  Indeed, several of
25  the items of the claim file establish that they could not have been added to the claim file
   until several years after the tender.  Further, Fireman's Fund has not offered any evidence
26  that any of the material is its "claim file" was in the file at the time of the tender.

in gasoline sold in California, much less as evidence that Terrible Herbst did not sell gasoline containing MTBE during the policy period.  As regards Fireman's Fund's reliance on the 1979 date, the adjuster's knowledge is merely that such was the year in which the EPA authorized MTBE for use as an additive to gasoline.  Fireman's Fund has not offered any evidence, known to it at the time of the tender, that MTBE was not added to gasoline sold at the Terrible Herbst gasoline station prior to the EPA's authorization in 1979.

Accordingly, as the allegations of the underlying complaint do not preclude the potential for coverage, and as Fireman's Fund lacked knowledge, at the time of tender, of evidence establishing that Terrible Herbst did not sell gasoline containing MTBE during the policy period, it had a duty to defend that arose at the time of Terrible Herbst's tender. Therefore,

THE COURT **ORDERS** that Plaintiffs' Request for Judicial Notice (#37) is GRANTED;

THE COURT **ORDERS** that Plaintiffs' Motion for Partial Summary Judgment (#34) is GRANTED.

THE COURT **ORDERS** that Defendant's Motion for Leave to File Third-Party Complaint (#17) is DENIED.

DATED this _28_ day of September, 2007.

_____
Lloyd D. George
United States District Judge